UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

NCMIC INSURANCE CO.,                              Case No. 22-CV-2018 (PJS/DTS)

        Plaintiff/Counter-defendant,

v.

ALLIED PROFESSIONALS INSURANCE
CO., A RISK RETENTION GROUP, INC.,
KRISTIN SCHANTZEN, and JAY J.                              ORDER
SCHANTZEN,

        Defendants,

and

CHARLOTTE ERDMANN,

        Defendant/Counter-claimant.

---

Robert E. Kuderer, ERICKSON, ZIERKE, KUDERER & MADSEN, P.A.,
for plaintiff.

Jeffrey R. Mulder, BASSFORD REMELE, for defendant.

Defendant Charlotte Erdmann is a massage therapist who was sued for

malpractice in state court by defendants Kristin and Jay Schantzen.  Defendant Allied

Professionals Insurance Company ("APIC") insured Erdmann, and plaintiff NCMIC

Insurance Company ("NCMIC") insured Erdmann's employer.  After a dispute arose

over whether NCMIC's policy also covered Erdmann—and, if so, whether NCMIC

provided coverage that was primary or excess—NCMIC filed this lawsuit to resolve the dispute.

This matter is before the Court on APIC's motion to compel NCMIC to arbitrate this coverage dispute under an arbitration clause in APIC's insurance contract with Erdmann. NCMIC is not a party to that contract, nor is it a party to any other contract in which it agreed to arbitrate the claims that it has asserted in this lawsuit. APIC argues that NCMIC can nonetheless be compelled to arbitrate. The Court disagrees and denies APIC's motion.

## I. BACKGROUND

This is a coverage action brought to resolve a dispute between NCMIC and APIC about their respective obligations to Erdmann in connection with a malpractice action filed against Erdmann in Minnesota state court. *See* Compl. ¶¶ 11–12, ECF No. 1. The underlying action was filed by Kristin Schantzen and her husband Jay against Erdmann and her employer, Valley Chiropractic Clinic ("Valley"), for injuries sustained by Kristin during a massage-therapy session. *See* Compl. Ex. 1, ECF No. 1-1. APIC defended Erdmann pursuant to her Massage Professional & General Liability Insurance Policy (the "APIC policy"), *see* Compl. Ex. 2, ECF No. 1-2, and NCMIC defended Valley pursuant to its Chiropractic Malpractice Professional Liability Insurance Policy (the "NCMIC policy"). *See* Compl. Ex. 3, ECF No. 1-3.

Both APIC and Erdmann tendered the Schantzens' claims against Erdmann to NCMIC, but NCMIC declined to defend or indemnify her.  *See, e.g.*, Kuderer Decl. Ex. 2, ECF No. 46-2; *id.* Ex. 3, ECF No. 46-3; *id.* Ex. 4, ECF No. 46-4.  Instead, NCMIC filed this declaratory-judgment action.  In the first count of its complaint, NCMIC seeks a declaration that it is not obligated under the NCMIC policy to defend or indemnify Erdmann against the Schantzens' claims.  *See* Compl. ¶¶ 26–28.  In the second count, NCMIC seeks a declaration that if the NCMIC policy is found to cover Erdmann, that coverage is excess to the coverage provided to Erdmann under the APIC policy.  *See* Compl. ¶¶ 29–31.

While this coverage action was pending, both Erdmann and Valley settled with the Schantzens.  Erdmann agreed to pay $1.6 million, *see* Kuderer Decl. Ex. 5, ECF No. 46-5, while Valley agreed to pay $250,000.  *See id.* Ex. 9, ECF No. 46-9.  Everyone agrees that NCMIC must pay the $250,000 settlement.  What the parties dispute is whether NCMIC or APIC is responsible for paying the $1.6 million settlement.

APIC has moved to compel arbitration of that dispute.  The basis for APIC's motion is an arbitration clause in its policy covering Erdmann.  That clause provides in relevant part:

> All disputes or claims involving [APIC] shall be resolved by binding arbitration, whether such dispute or claim arises between the parties to this Policy, or between [APIC] and

> any person or entity who is not a party to the Policy but is
> claiming rights either under the Policy or against [APIC].

Compl. Ex. 2.   APIC asks this Court to order NCMIC to arbitrate its claims under this

clause, even though NCMIC is not a party to the contract in which the clause appears.

## II. ANALYSIS

### A. Standard of Review

A motion to compel arbitration "is properly analyzed under either Rule 12(b)(6)

or Rule 56." *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017).

Where, as here, the parties have introduced matters outside of the pleadings, *see, e.g.*,

Preus Decl., ECF No. 34; Kuderer Decl., ECF No. 46, application of the summary-

judgment standard is appropriate.  *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737,

742 (8th Cir. 2014).

Summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution

might affect the outcome of the suit under the governing substantive law.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  *Id.* at 255.

*B. Compelling Arbitration*

"The Federal Arbitration Act (FAA) 'establishes a liberal federal policy favoring arbitration agreements.'"  *Duncan v. Int'l Mkts. Live, Inc.*, 20 F.4th 400, 402 (8th Cir. 2021) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018)).  "But despite arbitration's 'favored status,' a party cannot be compelled to arbitrate unless it has contractually agreed to be bound by arbitration."  *Id.* (quoting *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019)).  Thus, on a motion to compel arbitration, the "primary inquiry is 'whether the parties formed a valid contract that binds them to arbitrate their dispute.'"  *Id.* (quoting *Shockley*, 929 F.3d at 1017).  "State contract law governs whether a valid agreement to arbitrate exists."  *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022).

In moving for an order compelling NCMIC to arbitrate its claims, APIC relies entirely on the arbitration clause found in the malpractice policy that APIC issued to Erdmann.  NCMIC is, of course, not a party to that contract, and APIC does not argue otherwise.  Instead, APIC argues that NCMIC should be compelled to arbitrate its claims under a doctrine known as "direct-benefits estoppel," which is a type of equitable estoppel.  Some courts have used the doctrine of direct-benefits estoppel to "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful."  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d

187, 200 (3d Cir. 2001); *see also Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012)

("Direct benefits estoppel applies when a nonsignatory knowingly exploits the

agreement containing the arbitration clause." (quoting *Bridas S.A.P.I.C. v. Gov't of*

*Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003))).

APIC's argument that NCMIC can be forced to arbitrate under the doctrine of

direct-benefits estoppel has some problems.

To begin with, APIC has made no effort to ground its argument in Minnesota

law.  The FAA "permits courts to apply state-law doctrines related to the enforcement

of arbitration agreements," including doctrines related to equitable estoppel.  *GE Energy*

*Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643–44

(2020).  Courts "look to the forum state's contract law" for these doctrines.  *Northpoint*

*Health Servs. of Ark., LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019).

The Minnesota Supreme Court has neither recognized nor rejected the doctrine

of direct-benefits estoppel.  The few Minnesota cases addressing equitable estoppel do

so in the context of *non-signatories* attempting to compel *signatories* to arbitrate claims

pursuant to the contracts that they signed.  *See, e.g., Onvoy, Inc. v. SHAL, LLC*, 669

N.W.2d 344, 356 (Minn. 2003); *ev3 Inc. v. Collins*, Nos. A08-1816, A08-1901, 2009 WL

2432348, at *2–7 (Minn. Ct. App. Aug. 11, 2009) (unpublished).  As far as the Court can

tell, no Minnesota court has forced a *non-signatory* to arbitrate a claim pursuant to an

arbitration clause in a contract that it did not sign. That, of course, is what APIC seeks to do in this case.

"If the highest state court has not decided an issue [a federal court] must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010). As the Eighth Circuit has observed, "Minnesota appears to follow federal law regarding equitable estoppel." *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 921–22 (8th Cir. 2013); *see also Onvoy* 669 N.W.2d at 356 (drawing exclusively from federal circuit-level case law and a commercial-arbitration treatise in discussion of equitable estoppel); *ev3 Inc.*, 2009 WL 2432348, at *3 (noting *Onvoy* court's reliance on federal case law and relying on same for equitable-estoppel analysis). Since both federal case law and the treatise relied on by the Minnesota Supreme Court in *Onvoy* embrace the doctrine of direct-benefits estoppel, *see, e.g.*, *Reid*, 701 F.3d 845–48; 1 Martin Domke, Gabriel Wilner & Larry E. Edmonson, *Domke on Commercial Arbitration* §§ 13.9, 13.11 (2022), this Court predicts that the Minnesota Supreme Court would adopt some form of the doctrine.

That is not the end of the inquiry, however. As the Third Circuit recognized, direct-benefits cases generally "involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during

litigation, attempt to repudiate the arbitration clause in the contract." *E.I. DuPont de Nemours*, 269 F.3d at 201.  Under the Eighth Circuit's formulation (which the Minnesota Supreme Court would likely adopt), direct-benefits estoppel can be invoked when a non-signatory exploits or embraces a contract containing an arbitration clause "(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Reid*, 701 F.3d at 846 (quoting *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)).

APIC relies heavily on the two grounds identified by *Reid*, but neither of those grounds justifies compelling NCMIC to arbitrate in this case.

### 1. Direct Benefit of the APIC Policy

NCMIC is not pursuing a direct benefit under the APIC policy.  To the contrary, NCMIC argues that it is not a party to the APIC policy, and thus the policy does not confer any benefits (or impose any obligations) on NCMIC.  What NCMIC seeks in this action is a determination of (1) NCMIC's obligations to *Erdmann* under the NCMIC policy, and (2) APIC's obligations to *Erdmann* under the APIC policy.  NCMIC does not claim that APIC has any obligations to *NCMIC* under the APIC policy.

At oral argument, APIC relied heavily on *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351 (S.D. Fla. 2020), in which a court compelled arbitration of a bad-faith

failure-to-settle claim brought under Florida law by an injured plaintiff against the insurer of the chiropractor who injured him.  *See id.* at 1344–45, 1357–60.  Like this case, *Gomez* involved a party to an insurance policy containing an arbitration clause (the chiropractor's insurer) seeking to compel a non-party to the policy (the injured plaintiff) to arbitrate.  But there are at least two major differences between *Gomez* and this case:

First, in *Gomez*, the non-party plaintiff characterized himself as "a third-party beneficiary to the [chiropractor's] insurance policy," and the court gave substantial weight to that characterization in ordering the plaintiff to arbitrate.  *Id.* at 1359–60. Here, by contrast, NCMIC has never claimed to be a third-party beneficiary to the APIC policy, and the policy itself says that there "are no intended third party beneficiaries by or under this Policy . . . . "  *See* Compl. Ex. 2 § V.Q; *see also Mounce v. CHSPSC, LLC*, No. 5:15-CV-05197, 2015 WL 9412929, at *5 (W.D. Ark. Dec. 22, 2015) (declining to apply direct-benefits estoppel against non-signatory plaintiff where agreement containing arbitration clause similarly "disclaims an intent to benefit [plaintiff] or any patient like her").

Second, in *Gomez*, the non-party plaintiff had obtained a judgment against the chiropractor and was seeking "indemnity benefits provided" under the chiropractor's policy and "payment of the outstanding judgment."  *Id.* at 1360.  In other words, the

plaintiff was asking the Court to order the insurer to pay "benefits arising from the policy's provisions" *to the plaintiff. Id.*

NCMIC seeks no such thing in this action. Again, in the first count of the complaint, NCMIC asks the Court to determine whether NCMIC has obligations to Erdmann under the *NCMIC* policy; the APIC policy (the policy with the arbitration clause) is utterly irrelevant to that claim. In the second count, NCMIC asks that, if the Court determines that Erdmann is covered under the NCMIC policy, the Court determine whether *Erdmann's* coverage under the NCMIC policy is primary or excess to *Erdmann's* coverage under the APIC policy. NCMIC is not arguing that *it* is "entitled to any rights or benefits under" the APIC policy. *Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir. 2006).

Of course, if this Court determines that APIC's coverage is primary and NCMIC's is excess, NCMIC will benefit financially. But for *direct*-benefits estoppel to apply, the non-signatory must benefit *directly*—i.e., the non-signatory must have "received something more than an incidental or consequential benefit of the contract" containing the arbitration provision. *Gomez*, 457 F. Supp. 3d at 1360 (quoting *Kong v. Allied Pros. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014)); *see also Nitro Distrib.*, 453 F.3d at 998 (explaining that any benefits plaintiffs derived from existence of defendants' distribution network and agreements containing arbitration clauses were "at best,

-10-

indirect and insufficient to support estoppel"); *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (explaining that market dominance for non-signatory resulting from contract containing arbitration clause was "not the sort of benefit which this Court envisioned as the basis for estopping a non-signatory from avoiding arbitration"); Domke et al., *supra*, § 13:9 (observing that direct-benefit approach to equitable estoppel "does not apply if the claimed benefits are insubstantial or indirect").

For these reasons, the Court holds that NCMIC is not "knowingly seeking and obtaining 'direct benefits' from [the APIC insurance policy]," and thus NCMIC cannot be ordered to arbitrate on the first *Reid* ground.  *Reid*, 701 F.3d at 846 (quoting *Noble Drilling Servs.*, 620 F.3d at 473).

### 2.  Enforcing or Referencing the APIC Policy

Not surprisingly, APIC relies most heavily on the second *Reid* ground, arguing that by seeking a declaration that APIC's coverage is primary and NCMIC's excess, NCMIC is either "seeking to enforce the terms of" the APIC policy or "asserting claims that must be determined by reference to" the APIC policy.  701 F.3d at 846.  This argument is "seductive in its simplicity," *Mounce*, 2015 WL 9412929, at *4, for it is literally true that the Court cannot determine the priority of coverage without referring to the terms of the APIC policy.

-11-

But APIC has not cited (and the Court has not found) any case in which a non-party to a contract with an arbitration clause was forced to arbitrate its claims solely because adjudicating its claims would require "reference" to the contract. By contrast, the Court has found several cases in which courts have labored to find a way to avoid ordering a non-signatory to arbitrate under these circumstances. *See, e.g.*, *Reid*, 701 F.3d at 848 (declining to compel arbitration due to insufficiently close "nexus between the nonsignatory and the agreement with the arbitration clause"); *Noble Drilling*, 620 F.3d at 474 (finding that claims could be resolved based on prior representations to non-signatory, without reference to agreement containing arbitration clause); *E.I. DuPont de Nemours*, 269 F.3d at 201 (same).

It is not difficult to see why courts hesitate to order non-parties to arbitrate pursuant to contracts they did not sign but whose terms may have to be consulted in the course of litigation. Imagine, for example, that the Environmental Protection Agency brings an environmental-cleanup action against a company that has operated an oil refinery for decades. Imagine further that the company was insured under "multiple insurance policies issued by multiple companies over multiple years." *Land O' Lakes, Inc. v. Emps. Mut. Liab. Ins. Co. of Wisconsin*, 846 F. Supp. 2d 1007, 1010 (D. Minn. 2012), *aff'd sub nom. Land O' Lakes, Inc. v. Emps. Ins. Co. of Wausau*, 728 F.3d 822 (8th Cir. 2013). And imagine that, of the dozens of insurance policies that might

provide coverage, only one has an arbitration clause.  In determining the priority of
coverage of dozens of potentially applicable policies, a court would, of course, have to
consult the language of all of those policies, including the single policy with the
arbitration clause.  As APIC would have it, the entire coverage dispute would have to
be arbitrated, and thus numerous insurers who had never signed a contract with an
arbitration clause would lose their right to a jury trial.  "[E]viscerating a non-signatory's
Seventh Amendment right to trial by jury should not be so handily accomplished."
*Mounce*, 2015 WL 9412929, at *4.

Given such troubling implications, it comes as no surprise that courts addressing
*Reid*'s second ground for invoking direct-benefits estoppel have construed it narrowly.
Tellingly, in *Noble Drilling*—the very case from which *Reid* borrowed its two grounds
for invoking direct-benefits estoppel, *see* 701 F.3d at 846—the Fifth Circuit decided *not* to
apply the doctrine, pointing out that the non-signatory plaintiff did not "seek to enforce
a *specific* term" in the contract containing the arbitration clause, and that the plaintiff's
claims did not need to "be determined *solely* by reference" to that contract.  *Noble
Drilling*, 620 F.3d at 474 (emphasis added).  Similarly, in *ev3 Inc.*, the Minnesota Court of
Appeals refused to send a signatory's claims to arbitration based on equitable
estoppel—even though some of the claims arose out of contracts containing arbitration
clauses—because not *all* of the signatory's claims depended on those contracts.  *See* 2009

-13-

WL 2432348, at *5 ("[T]he principles of equitable estoppel should not be invoked on this claim alone because equitable estoppel applies '[w]hen *each* of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement.'" (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999))).

Although *ev3 Inc.* is an unpublished opinion, *see In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d at 921–22, the decision nevertheless suggests that Minnesota courts would adopt a rather modest version of direct-benefits estoppel, along the lines of the Fifth Circuit's *Noble Drilling* decision.  That approach counsels against applying direct-benefits estoppel here, especially given that NCMIC's first claim—which requests a declaration that it is not obligated to defend or indemnify Erdmann under its own policy—has absolutely nothing to do with APIC's policy.  (Of course, if NCMIC prevails on the first count, the second count will become moot.)  Thus, it cannot be said that NCMIC's first claim "makes reference to or presumes the existence of" APIC's policy. *ev3 Inc.*, 2009 WL 2432348, at *5 (quoting *MS Dealer*, 177 F.3d at 947).[1]

---

[1]The Court acknowledges that *ev3 Inc.* involves an attempt by non-signatories to compel signatories to arbitrate.  *See* 2009 WL 2432348, at *2.  But the Court sees no reason why the rule would be less stringent in the context of a signatory attempting to compel a non-signatory to arbitrate.  If anything, a court should be more reluctant to compel a non-signatory to arbitrate.  *See, e.g.*, *Nitro Distrib.*, 453 F.3d at 999 (distinguishing cases compelling signatory to arbitration in declining to compel non-signatory to arbitration); *Bridas S.A.P.I.C.*, 345 F.3d at 361 ("The distinction is *not* one

(continued...)

-14-

Even NCMIC's second claim—seeking a declaration about which insurer's coverage is primary—will not "be determined solely by reference" to APIC's policy (if the claim is not rendered moot by the disposition of the first claim). *Noble Drilling*, 620 F.3d at 474. Rather, that claim will be determined by reference to APIC's policy *and* NCMIC's policy *and* the applicable common-law rules.[2]

NCMIC's second claim also cannot be characterized as seeking "to enforce a specific term" of the APIC policy. *Noble Drilling*, 620 F.3d at 474. NCMIC is not asking the Court to order APIC to perform a specific obligation under its policy; again, NCMIC freely admits that, as a non-party, it has no right to compel the parties to that contract to do *anything*. *See Mounce*, 2015 WL 9412929, at *6, n.1 (refusing to invoke direct-benefits estoppel where all but one of non-signatory's claims "could be proven without requiring specific performance of the agreement" containing arbitration agreement, and where only claim requiring specific performance was dependent on outcome of other claims). Rather, NCMIC brought this lawsuit because it "anticipate[d] a potential claim

---

[1](...continued)
without a difference.").

[2]NCMIC is asking the Court to determine priority by applying Minnesota's "total insuring intent" and "closest-to-the-risk" tests, both of which involve discerning the intended functions of the policies and identifying the risks that are reflected in each policy's premiums. *See U.S. Fid. & Guar. Ins. Co. v. Com. Union Midwest Ins. Co.*, 430 F.3d 929, 934 (8th Cir. 2005).

for indemnification or contribution," and such an action "cannot justify direct benefits estoppel." *Elasser v. DV Trading, LLC*, 444 F. Supp. 3d 916, 928 (N.D. Ill. 2020).

In sum, NCMIC's second claim—assuming that it is not rendered moot—will require the Court to "refer[] to" the APIC policy. *Reid*, 701 F.3d at 846 (quoting *Noble Drilling*, 620 F.3d at 473). But the Court finds that this is insufficient to invoke direct-benefits estoppel. What courts *say* is sometimes not the same as what courts *do*. Like a recessive gene, language in case law sometimes replicates without having any real effect. That is the case with *Reid*'s second ground. Absent a clear directive to the contrary from the Minnesota Supreme Court or the Eighth Circuit, this Court will not hold that NCMIC lost its constitutional right to a jury trial of a $1.6 million coverage dispute because resolving that claim will require mere *reference* to a contract that NCMIC never signed or sought direct benefits under. *See Mounce*, 2015 WL 9412929, at *6 ("Ordering a non-signatory to a contract to abide by the contract's terms is not an act to be taken lightly, particularly when doing so would result in the non-signatory's loss of a constitutional right."). "The linchpin for equitable estoppel is equity—fairness," and such a holding would be grossly unfair. *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000).

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT defendant Allied Professional Insurance Company's

motion to compel arbitration and dismiss plaintiff's complaint or stay proceedings [ECF

No. 31] is DENIED.

Dated:  September 26, 2023                s/Patrick J. Schiltz_____
                                          Patrick J. Schiltz, Chief Judge
                                          United States District Court