## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NCMIC Ins. Co., | Case No. 22-cv-2018 (JMB/SGE) |
| Plaintiff, | |
| v. | **ORDER** |
| Allied Professional Ins. Co. *et al.*, | |
| Defendants. | |

This is a declaratory action to resolve an insurance coverage dispute. Plaintiff NCMIC Insurance Company moves to compel responses to interrogatories and deposition answers from Defendant Allied Professional Insurance Company's 30(b)(6) representative. (Dkt. 107.) Separately, Allied moves to strike an errata sheet NCMIC served after the deposition of its own 30(b)(6) representative. (Dkt. 123.) The court heard argument on the motions on February 6, 2026. (See Dkt. 136.) Based on the arguments of counsel, and all the files, records, and proceedings herein, the court will grant-in-part and deny-in-part both motions.

## BACKGROUND

NCMIC and Allied are competitors in the chiropractic insurance market, both marketing and issuing insurance coverage for acupuncture, chiropractic, massage, and naturopathy. Allied has business relationships with both the Association of Bodywork and Massage Professionals ("ABMP") and the National Chiropractic Council ("NCC"). NCMIC has its own business relationships with several stakeholder groups, including the

American Chiropractic Association, Congress of Chiropractic State Associations, International Chiropractors Association, World Federation of Chiropractic, and the National Business Association for Chiropractors.

Defendant Charlotte Erdmann is a massage therapist and the named insured under a "Massage Professional & General Liability Insurance Policy" issued by Allied. NCMIC insured Erdmann's employer, Valley Chiropractic Clinic, for claims of chiropractic malpractice. Erdmann and Valley Chiropractic were sued by one of Erdmann's clients on May 17, 2019, for injuries arising from a therapeutic massage. Allied defended Erdmann under the "Massage Professionals" policy, and NCMIC defended Valley Chiropractic under its Chiropractic Malpractice policy.

NCMIC initiated this action, seeking two declarations: 1) a declaration as to the extent, if any, of NCMIC's duty to defend or indemnify Erdmann against the claims in the underlying action; and 2) a declaration that Allied is the primary coverage for Erdmann's liability and NCMIC is, at most, excess coverage. (Compl., Dkt. 1, ¶¶ 28, 31.) After the underlying action against Erdmann and Valley Chiropractic settled, Allied filed a counterclaim in this action against NCMIC for equitable contribution towards its share of the settlement. (Dkt. 66.)

Two motions are currently before the court: NCMIC's Motion to Compel Deposition Answers (Dkt. 107) and Allied's Motion to Strike NCMIC's Errata Sheet (Dkt. 123). The Court will address each motion in turn.

## I.    NCMIC's Motion to Compel

### A.  Background

#### 1.  Discovery Requests

On May 22, 2025, NCMIC served discovery requests on Allied. Included were the following Interrogatories:

> 11.    Identify all executive officers of Allied who are officers or representatives of [ABMP].
>
> 12.    Set forth in detail all relationships, contractual or otherwise, between Allied and [ABMP].
>
> . . .
>
> 15.    Have you ever represented AMBP to the public as your "insurance partner?"
>
> 16.    Have you or an affiliated entity, including National Chiropractic Council, ever provided liability insurance to chiropractors? If so, state:
>
> > a.    when the insurance was first offered;
> >
> > b.    the entity marketing the insurance;
> >
> > c.    total number of chiropractors insured; and
> >
> > d.    state where the liability insurance was offered.
>
> 17.    State fully the legal relationship, past or present, between Allied and the National Chiropractic Council.
>
> 18.    Describe the role Michael J. Schroeder performs for Allied, ABMP, and National Chiropractic Council.

(Decl. of Robert Kuderer, Dkt. 110, Ex. 1.)

Also included in NCMIC's May 22, 2025 discovery requests were the following Requests for Production of Documents:

> 7.    Copies of all insurance policy forms offering chiropractic professional liability or similar coverage by Allied from 2015-2021, including any offered through the National Chiropractic Council.
>
>  . . .
>
> 18.    All promotional materials provided by Allied or [ABMP] to Charlotte Erdmann or other members from 2016-2020 pertaining to benefits of ABMP membership or insurance coverage through Allied.
>
> 19.    All documents in your possession relating to or evidencing Charlotte Erdmann's membership in [ABMP].
>
> 20.    All promotional materials for chiropractic professional liability coverage offered through you or the National Chiropractic Council from 2015-2021.

(*Id.*, Ex. 2.)

Allied served responses to NCMIC's discovery requests on June 30, 2025. (*Id.*, Exs. 3 & 4.) Its responses included objections on grounds of relevance, undue burden, confidential information and "the right of privacy under the California constitution." (*Id.*)

### 2.  30(b)(6) Deposition of Allied

NCMIC served Allied with a Notice of Rule 30(b)(6) Deposition on August 15, 2025, and identified several topics of examination. (*Id.*, Ex. 7.) Michael Schroeder, Allied's Vice President and designated 30(b)(6) deponent, sat for deposition on September 23, 2025. (Dkt. 110, Ex. 8.) During his deposition, NCMIC asked Mr. Schroeder several questions about Allied's relationship with AMBP and Mr. Schroeder refused to answer

4

those questions, raising objections on grounds of "privilege," "relevance," and the "California State Constitution." (*See, e.g., id.*, Ex. 8 at 30:20-36:7.) NCMIC moves to compel Allied to produce a properly prepared 30(b)(6) witness and compel answers to the questions that Mr. Schroeder refused to answer, as well as reasonable follow up.

### B. Analysis

#### 1. Legal Standard

Under the federal rules, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the dispute, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Also, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The party seeking discovery has the burden of showing relevance before the requested information is produced. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Although discoverability is broader than admissibility, this standard "should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* The party resisting production "bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphing Packaging Int'l, Inc.*,

5

Case no. 15-cv-3183 (ADM/LIB), 2016 WL 6997113 at *7 (D. Minn. Sept. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Cin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Courts have broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quotation omitted)); *Soultran, Inc. v. U.S. Bancorp.*, Case no. 13-cv-2637 (SRN/BRT), 2016 WL 7177099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice." (cleaned up)).

When evaluating sufficiency of answers or objections, "the court obviously must consider the phraseology of the requests as carefully as that of the answers or objections." *Xcel Energy v. United States*, 237 F.R.D. 416, 421 (D. Minn. 2006). "A reviewing court should not permit a responding party to undermine the efficacy of the rule by creating disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden an opposing party." *Id.*

### 2. Analysis

#### a. Allied's Relationship with ABMP

NCMIC seeks an order compelling Allied to answer questions about ABMP and the nature of Allied's relationship with ABMP. Mr. Schroeder testified that Erdmann's insurance depended on her status as an ABMP member (73:1-3, 75:16-24), that Erdmann paid her insurance premiums to ABMP which forwarded money to Allied (41:3-22), and

6

that Erdmann would report claims to Allied either directly or through ABMP (40:3-11). NCMIC relies on this testimony to argue that Allied's relationship with ABMP is relevant to the claims and defenses in this matter. It further argues that Allied's refusal to answer certain questions and invocations of privilege were improper.

The claims and defenses in this case concern whether the Allied policy covers Erdmann for the claims in the underlying action, whether the NCMIC policy covers the claims, and what the priority of coverage is between those two policies. (*See* Compl.) When resolving claims like these, courts first compare the language of the competing insurance policies to determine order of coverage. *See, e.g.*, *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 588 (Minn. 2003). When two or more insurance policies are liable to the insured for the loss, courts apply one of two tests to determine the intent of the parties: the "total policy insuring intent" test or the "closest-to-the-risk" test." *Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 239 N.W.2d 445, 446-47 (Minn. 1976); *Auto-Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700, 704 (Minn. 1979). In the total-policy-insuring-intent analysis, courts evaluate the "primary policy risks upon which each policy's premiums were based as determined by the primary function of each policy." *Integrity Mut. Ins.*, 239 N.W.2d at 446. In the closest-to-the-risk analysis, courts evaluate three factors: 1) which policy specifically describes the accident-causing instrumentality; 2) which premium is reflective of the greater contemplated exposure; and 3) whether one policy contemplates the risk and use of the accident-causing instrumentality with greater specificity than the other policy, i.e., whether coverage of the risk is primary in one policy

and incidental in the other. *Hertz Corp. v. State Farm Mut. Ins. Co.*, 573 N.W.2d 686, 691 (Minn. 1998). As the *Integrity* court described it,

> [t]he nub of the Minnesota doctrine is that coverages of a given risk shall be 'stacked' for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last. If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves on the basis of their respective liabilities.

*Id.* at 447. These approaches both address the ultimate issue the parties bring before this Court: whichever insurance was intended to apply to the specific event that caused the harm is the insurance that bears primary coverage.

Neither the analytical frameworks above, nor the policy language, nor NCMIC's arguments to this Court demonstrate that Allied's business relationship with ABMP is relevant to determining the priority of the policies at issue. Information about Allied's business relationship with ABMP is not relevant to whether the policy language makes NCMIC or Allied primarily or secondarily liable for the loss. *See Integrity*, 239 N.W.2d at 447. Nor would information about this relationship address any of the factors of the closest-to-the-risk analysis. *See Hertz*, 573 N.W.2d at 691. The business relationship between Allied and ABMP is outside the scope of relevance to the claims in this case. Likewise, the contested interrogatories seeking information about Allied's business relationship with ABMP and the NCC are not relevant to the coverage analysis above. (See Decl. of Robert

8

E. Kuderer, Dkt. 110, Ex. 1.) For these reasons, NCMIC's motion to compel information about Allied's business relationship with ABMP and NCC is denied.[1]

Additionally, NCMIC seeks an order compelling Allied to produce documents in response to RFPs 7, 18, 19, and 20. RFP 7 requests copies of insurance policy forms offering chiropractic professional liability or similar coverage by Allied from 2015-2021, including any offered through the NCC. These documents are generally relevant and could provide evidence regarding the interpretation of terms of Allied's policies. To the extent NCMIC requests promotional materials for policies that Allied offered through NCC, the Court shares Allied's concerns that these documents might be sought for alternative purposes. Like information relating to Allied's relationship to ABMP, information regarding Allied's relationship to NCC is not relevant to the claims or defenses in this action. However, any policies that Allied offered from 2015-2021, through NCC or otherwise, would generally be discoverable.

As for RFPs 18, 19, and 20, the Court finds documents and promotional materials concerning insurance coverage through Allied are relevant and discoverable. However, NCMIC has not demonstrated that documents "pertaining to benefits of ABMP membership" or "relating to or evidencing Charlotte Erdmann's membership in ABMP" or promotional materials of policies offered through NCC are relevant to the claims or defenses in this action. Accordingly, NCMIC's motion to compel will be granted to the

---

[1] The Court notes that some aspects of NCMIC's Interrogatories—specifically, the portions of them seeking information other than Allied's business arrangements with third parties—received answers from Allied. *See, e.g.,* Answer to Interrogatory 18 (stating Mr. Schroeder's role with Allied).

extent it seeks copies of forms offering chiropractic professional liability or similar coverage by Allied from 2015-2021. In all other respects, including to the extent it seeks to compel the production of documents of policies offered through ABMP or NCC, the motion will be denied.

### b. NCMIC's Requested Sanctions

NCMIC also requests an order requiring Allied to pay sanctions for violating Federal Rule of Civil Procedure 30(c)(2). It argues that Allied's corporate representative refused to answer certain questions at the 30(b)(6) deposition, Allied failed to properly assert any privilege when refusing to answer questions, and the conduct of Allied and Allied's counsel at the deposition all warrant an order compelling testimony and an award of attorneys' fees as appropriate sanctions.

Rule 30(c)(2) governs the conduct of examination by deposition:

> An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2). Rule 30(d) "explicitly authorizes the court to impose [as a sanction] the cost resulting from obstructive tactics that unreasonably prolong a deposition on the person who engaged in such obstruction." Fed. R. Civ. P. 30 advisory committee's note (explaining Rule 30(d) sanctions). "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding what

10

questions the witness should answer." *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 534 (M.D. Pa. 2002) (cleaned up). "Except when protecting a privilege, or in extraordinary circumstances . . . counsel cannot prevent witnesses from answering questions. Instead, counsel must make their objections on the record and rely on the court to rule upon the objections if the parties use the deposition in later proceedings." *J.C. v. Soc'y of Jesus, Oregon Province*, 2006 WL 3158814, at *6 (W.D. Wash. Oct. 27, 2006).

This Court has reviewed the 30(b)(6) deposition of Mr. Schroeder, Allied's Vice President. (Kuderer Decl., Ex. 8.) On some occasions, Allied's counsel directed Mr. Schroeder not to answer questions for reasons other than those contemplated by Rule 30(c)(2). On other occasions, Mr. Schroeder interposed his own objections to NCMIC's questions and refused to answer questions for reasons other than to preserve a privilege or enforce a court-ordered limitation. The only argument Allied offers in support of its refusal to answer these questions is that the questions seek confidential business information that is not relevant to the dispute.

This Court concludes that Allied's counsel's instructions not to answer and Allied's witness's independent objections and refusals to answer were improper under the rules but declines to impose the sanctions that NCMIC seeks. The conduct of counsel and the witness at the deposition was, in this Court's view, unprofessional. The Federal Rules contemplate the disagreement that the parties faced at this deposition and provide a means for resolving the dispute. The appropriate avenue for Allied to assert its objections and claims of privilege would have been to move for a protective order under Rule 30(d)(3).

11

Although Allied's actions during the deposition were improper and disruptive, they did not render the deposition unusable. *See Craig v. St. Anthony's Medical Ctr.*, 384 F. App'x 531 (8th Cir. 2010) (upholding sanctions of deposition fees and costs after attorney's conduct rendered deposition "unusable"). Furthermore, as this Court determines above, much of the information that NCMIC sought, and Allied's witness refused to provide, is not relevant to this case.

Requiring the parties to revisit the deposition only so NCMIC can seek irrelevant information and Allied can seek protection as provided for in Rule 30 would be a wasteful exercise that runs contrary to Rule 1's direction to administer and employ the rules "to secure the just, speedy, and inexpensive determination" of every case. Fed. R. Civ. P. 1. Accordingly, NCMIC's motion to compel deposition answers and motion for sanctions is granted-in-part and denied-in-part.

## II.      Allied's Motion to Strike NCMIC's Errata Sheet

### A.  NCMIC's 30(b)(6) Deposition and Errata Sheet

We will now turn to Allied's Motion to Strike NCMIC's Errata Sheet. (Dkt. 123.) On October 6, 2025, Allied served NCMIC with a Notice of Rule 30(b)(6) Deposition and identified 21 topics of examination. (Decl. of Jeffrey Mulder, Dkt. 126, Ex. 1.) Allied served a Second Amended Notice of 30(b)(6) Deposition that added an additional topic. (*Id.*, Ex. 2.) The deposition took place on November 10, 2025, and Keith Henaman, NCMIC's Senior Vice President of Claims, served as NCMIC's corporate designee. (*Id.*, Ex. 1.)

12

The court reporter provided the parties a copy of the deposition transcript on November 14, 2025, and on December 11, 2025, NCMIC served an "ERRATA SHEET" for the deposition. (Decl. of Jeffrey Mulder, Dkt. 120, Ex. 6 ("Errata Sheet").) The six-page errata sheet purported to change 103 of Mr. Henaman's deposition answers and provided "Make Accurate" as the reason for every correction. (*Id.*) Allied moves to strike NCMIC's errata sheet, arguing that the proposed "errata" change the substance of Mr. Henaman's sworn testimony.

## B. Legal Standard

Rule 30(e)(1) allows witnesses to review and make changes to the deposition transcript after the fact. It provides:

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
   A. To review the transcript or recording; and

   B. If there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e). The plain language of the rule allows a deponent to make "changes in form or substance" to her testimony. Fed. R. Civ. P. 30(e)(1)(B). Many courts read this language broadly to allow a deponent to make any changes to the testimony as long as the alterations satisfy the procedural requirements of the rule. *See* 8A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2118 (3d ed.). Under this line of authority, even changes that create inconsistencies or contradict prior testimony are allowed. *See, e.g.*, *Podell v. Citicorp Diners Club*, 112 F.3d 98, 103 (2d Cir. 1997); *Aetna Inc. v. Express*

13

*Scripts, Inc.*, 261 F.R.D. 72, 75 (E.D. Pa. 2009); *Cultivos Yadran S.A. v. Rodriquez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009); *Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D. Tex. 2005); *Lugtig v. Thomas*, 89 F.R.D. 649, 641 (N.D. Ill. 1981).

A number of other courts addressing the issue, however, have held that Rule 30(e) does not allow a deponent to make substantive or contradictory changes to prior sworn testimony. *See, e.g.*, *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560, 565-66 (6th Cir. 2009) (unpublished); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225-26 (9th Cir. 2005); *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 (10th Cir. 2002) *Lee v. Zom Clarendon, L.P.*, 689 F. Supp. 2d 814, 819 (E.D. Va. 2010); *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296 (D. Md. 2008); *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (stating that Rule 30(e) does not "allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.").

The Eighth Circuit has not directly addressed whether Rule 30(e) allows a party to make substantive changes to deposition testimony after the fact, but a few cases in this District have permitted it. In *Cham v. McNeilus Truck and Manufacturing*, Magistrate Judge Graham applied a flexible approach and struck portions of an errata sheet that she determined were "inconsistent with [the deponent's] original testimony." Case no. 11-cv-2569 (DWF/JJG), 2012 WL 12873768, at *3 (D. Minn. July 9, 2012). In *Willoughby II Homeowners Assoc. v. Hiscox Insurance Co.*, Magistrate Judge Thorson relied on previous cases from this district that employed a "flexible approach" and allowed proposed changes

14

in an errata sheet that the deponent provided "sufficient justification" for. Case no. 20-cv-777 (WMW/BRT), 2021 WL 3077070, at *12 (D. Minn. July 21, 2021) (citing *Sanny v. Trek Bicycle Corp.*, Case no. 11-cv-2936 (ADM/SER), 2013 WL 1912467 (D. Minn. May 8, 2013), and *Holverson v. ThyssenKrupp Elevator Corp.*, Case no. 12-cv-2765 (ADM/FLN), 2014 WL 3573630 (D. Minn. July 18, 2014)). In *Sanny*, Judge Montgomery examined this issue and determined that allowing substantial edits to a deposition transcript after the fact would offer "cold comfort" to  party that might otherwise have prevailed at summary judgment. *Sanny*, 2013 WL 1912467 at *14. Judge Montgomery also noted that the Eighth Circuit has articulated a "flexible, though cautious, approach to striking 'sham affidavits.'" *Id.* (citing *City of Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 475-76 (8th Cir. 2006)).

Ultimately, this Court agrees. Using a flexible-but-cautious approach when addressing analogous issues "best serves the interests of fairness and efficiency." *Id.* (citing *EBC. Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 267-68 (3d Cir. 2010)). Keeping this in mind, the Court's present task is to determine whether NCMIC has provided sufficient justification for the proposed changes, whether the proposed amendments truly reflect the deponent's original testimony, or whether the other circumstances satisfy the Court that amendment should be permitted. *See EBG, Inc.*, 618 F.3d at 2709.

### C.  NCMIC's Justification Is Insufficient

The Court has reviewed both the deposition transcript and NCMIC's errata sheet detailing its proposed alterations, and it finds that NCMIC's offered justification for its proposed amendments is almost entirely insufficient. After each entry on its errata sheet,

NCMIC provides the reason for the amendment as "Make accurate." (*See* Errata Sheet, Dkt. 120, Ex. 6.) Broadly, allowing errata amendments to substantively change deposition testimony or significantly expand on the answers without justification "is unjust and inefficient and would render deposition testimony meaningless." *Elsherif v. Mayo Clinic*, Case no. 18-cv-2998 (DWF/KMM), 2020 WL 6743482, at *2 (D. Minn. Nov. 17, 2020). Courts in this district have found errata sheets using similar justifications lacking. *See, e.g.*, *Cham*, 2012 WL 12873768, at *4 (refusing to allow changes justified by "not correct," "just no," "short," "too long," "trick question," and "prolong"). And the Federal Rules do not allow parties to treat a deposition as "a take home examination that allows a deponent to alter what was said under oath." *Elsherif*, 2020 WL 6743482, at *2.

Only two of NCMIC's proposed alterations do not substantively change the deposition testimony. First, at 24:4, NCMIC proposes to correct the name of an individual identified in its compliance department. And second, at 55:25, NCMIC proposes changing "$3,00,000" to "$3,000,000." These alterations are clearly efforts to clean up the transcript to properly identify an individual who was mis-named in the deposition and to address a simple typographical error. NCMIC's "Make accurate" justification is sufficient to permit these two alterations.

However, these are the only proposed alterations NCMIC has sufficiently justified. NCMIC's "Make correct" justification is not sufficient to allow it to materially change the testimony that its corporate representative gave at a 30(b)(6) deposition. For example, at 87:13, NCMIC proposes changing Mr. Henaman's answer "Yes" to "No." (Errata Sheet at 4.) This is more than a minor alteration or typographical adjustment; this is as direct as a

16

contradiction can be. And it is not the only one. At 21:5-7, NCMIC proposes changing a non-committal "I don't know" to a three-sentence, detailed explanation. (Errata Sheet at 3.) Although NCMIC's proposed answer might be more accurate after reviewing the specifics of the documentation system being asked about, it both significantly changes and expands on Mr. Henaman's original answer and knowledge. Furthermore, allowing the volume of proposed changes to the deposition transcript that NCMIC proposes—the vast majority of which materially alter the deposition testimony and expand on Mr. Henaman's answers—is unjust and inefficient and would render NCMIC's 30(b)(6) deposition testimony meaningless. *See Elsherif*, 2020 WL 6743482 at *2.

The Court is sensitive to parties' needs from time to time to correct misstatements in depositions. Indeed, the Federal Rules allow amendments as long as the amending party provides a reason for the corrections. Other than the two corrections identified above, however, NCMIC has failed to provide sufficient justifications for the myriad corrections it proposes. Based on its review of the errata sheet and the proposed alterations in context, Allied's motion to strike NCMIC's errata sheet is granted-in-part and denied-in-part.

**<u>ORDER</u>**

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** NCMIC's Motion to Compel (Dkt. 107) and Allied's Motion to Strike (Dkt. 123) are both **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth above. Each party shall bear its own costs associated with these motions.

Dated: May 11, 2025                    *s/Shannon G. Elkins*
                                       Shannon G. Elkins
                                       United States Magistrate Judge